UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | **2:18-CR-20155-TGB-MKM-1** |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE (ECF NO. 38) AND ORDERING TRANSFER OF DEFENDANT FROM FCI ELKTON** |
| **CORY BRANT**, | |
| Defendant. | |

## I. Introduction

On April 20, 2018, Defendant Cory Brant pled guilty to two counts of possession with intent to distribute controlled substances, one count of felon in possession of a firearm, and one count of possession of a firearm in furtherance of a drug trafficking crime. ECF No. 17. On August 27, 2018, Mr. Brant was sentenced to 50 months on the first three counts to run concurrent; and 60 months on the final count to run consecutive to all other counts, to be followed by three years of supervised release. ECF No. 24. The Bureau of Prisons ("BOP") indicates that Brant currently has a release date of December 13, 2025.

Presently before the Court is Mr. Brant's Emergency Motion for Compassionate Release filed May 4, 2020. ECF No. 38. The Government

filed its Response on May 11, 2020 (ECF No. 41) and Mr. Brant replied on May 13, 2020 (ECF No. 42). For the reasons that follow, the Court will **DENY** Defendant's Motion (ECF No. 38) but recommends that the BOP reconsider Mr. Brant's request for home confinement. Alternatively, the Court **ORDERS** that Mr. Brant be immediately transferred from Elkton FCI in accordance with Judge Gwin's Order from the Northern District of Ohio.

## II. Background

### A.    Procedural History

Cory Brant is 26 years old. On March 8, 2018, Mr. Brant was charged in an 11-count indictment with possessing with intent to distribute controlled substances, being a felon in possession of a firearm, and possession of a firearm in furtherance of a drug trafficking crime. ECF No. 11. Mr. Brant pled guilty to four counts of the indictment and this Court sentenced Mr. Brant to 110 months imprisonment, followed by three years of supervised release. ECF No. 24. Mr. Brant is presently confined at FCI Elkton and has served 27 of his 110 months of incarceration. ECF No. 43, PageID.255.

### B.    COVID-19

The novel coronavirus disease of 2019, COVID-19, is a respiratory illness that is thought to spread mainly from person to person through respiratory droplets produced when an infected person coughs or sneezes. *See* Frequently Asked Questions, Centers for Disease Control and

Prevention Coronavirus (May 5, 2020) https://www.cdc.gov/coronavirus/ 2019-ncov/faq.html#How-COVID-19-Spreads. Because the droplets can land in the mouths or noses of people who are nearby or can be inhaled into the lungs, spread is more likely when people are in close contact with one another (within about six feet). *Id.*

The CDC also indicates that certain classes of individuals are at higher risk of developing severe illness if exposed to COVID-19, including "[p]eople with . . . moderate to severe asthma." People Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention (Mar. 31, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. Likewise, the CDC has issued guidance acknowledging that detention facilities "present [] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, CDC (May 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. "The CDC noted that many detention conditions create a heightened risk [for] detainees. These include: low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention

3

measures (e.g., social distancing and frequent handwashing)." *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at \*2 (E.D. Mich. Mar. 27, 2020).

## C. FCI Elkton

Mr. Brant seeks early release from his term of imprisonment, citing concerns about the conditions at FCI Elkton and the BOP's response to the alarming rate of the spread of the virus at that facility. Understandably so. The situation at FCI Elkton appears dire. As of June 2, 2020, 345 inmates have tested positive, seven staff have tested positive, and nine inmates have died. This does not account for the additional 109 inmates and 46 staff who have tested positive and recovered. Currently, FCI Elkton has the second highest mortality rate in the BOP, behind only Fort Worth FMC, where ten inmates have died. COVID-19 Cases, Federal Bureau of Prisons (last viewed June 2, 2020), https://www.bop.gov/coronavirus/. As a sister district court noted, "[t]he situation at FCI Elkton in particular is alarming . . . Elkton is filled to capacity and appears to have few tests." *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at \*9 (E.D. Pa. Apr. 1, 2020).

On April 13, 2020, inmates at FCI Elkton brought an emergency habeas action seeking release due to the alarming spread of COVID-19 throughout the prison. *See Wilson v. Williams*, 4:20-cv-00794-JG, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020). The lawsuit was brought on behalf of all inmates at FCI Elkton, as well as a "Medically Vulnerable

Subclass" consisting of persons of any age who experience, among other things "moderate to severe asthma." *Id.* at *3. Notably, the court concluded that the petitioners had demonstrated a likelihood of success on the merits of their Eighth Amendment claim. *Id.* at *8. The court held that the petitioners had met the threshold for showing that the respondents acted with deliberate indifference, pointing to Elkton's dormitory-style housing and failure to separate its inmates at least six feet apart. *Id.* The court emphasized: "despite their efforts, the Elkton officials fight a losing battle. A losing battle for staff. A losing battle for inmates." *Id.* at *1. The court ordered Elkton officials to evaluate each member of the Medically Vulnerable Subclass within two weeks for "eligibility for transfer out of Elkton through any means, including but not limited to compassionate release, parole or community supervision, transfer furlough, or non-transfer furlough." *Id.* at *10. "Subclass members who are ineligible for compassionate release, home release, or parole or community supervision must be transferred to another BOP facility where appropriate measures, such as testing and single-cell placement, or social distancing, may be accomplished." *Id.* at *11. Finally, "[a]ny subclass members transferred out of Elkton may not be returned to the facility until the threat of the virus is abated or until a vaccine is available." *Id.* While Elkton officials sought an administrative stay of

Judge Gwin's order, the Sixth Circuit declined the request.[1] *See Wilson v. Williams*, 4:20-cv-00794-JG, ECF No. 46 (May 6, 2020).

Despite these findings, the Government contends that Mr. Brant is "being protected by the BOP." ECF No. 41, PageID.220. They assert that "FCI Elkton has on-site medical care 16 hours a day," that "[a] staff member from the Medical Services tours housing units daily," and "[w]aterless soap dispensers have been placed in high volume, high risk areas." *Id.* While the Court does not doubt the BOP's efforts to stop the growing spread of the infection throughout FCI Elkton, the Court cannot ignore that two more inmates have died from COVID-19 from the time that Mr. Brant filed his motion to the writing of this Court's order. More inmates have died at FCI Elkton than almost any other BOP facility,[2] even though other facilities have experienced exponentially higher infection rates. *See* http://www.bop.gov/coronavirus (indicating 5 positive inmates at FCI Lompoc (895 inmates recovered) and 1 inmate death; indicating 454 positive inmates at FCI Forest City Low and 0 inmate deaths). Whatever FCI Elkton is doing, events are conspiring so that it is not working. *See* Jo An Bobby-Gilbert, FCI Elkton COVID-19 Cases

---

[1] Mr. Brant has been flagged as a member of this subclass. However, as explained in greater detail below, Mr. Brant indicates that despite Judge Gwin's 14-day deadline to transfer all subclass members out of FCI Elkton, Mr. Brant has yet to be transferred or even tested for COVID-19. *See* 4:20-cv-00794-JG, *Wilson v. Williams*, ECF No. 35-1, PageID.532; Defendant's Reply, ECF No. 43, PageID.258.

[2] FCI Elkton is behind only Fort Worth FMC, in Fort Worth Texas where, as of June 2, 2020, ten inmates have died from COVID-19.

Among Highest in Prisons, The Business Journal (Apr. 22, 2020)

https://businessjournaldaily.com/fci-elkton-covid-19-cases-among-

highest-in-prisons/; Brandon Brown, Portman Urges Increase in COVID-

19 Testing at FCI Elkton, WFMJ (Apr. 27, 2020) https://www.

wfmj.com/story/42061005/portman-urges-increase-in-covid19-testing-at-

fci-elkton.

## III. Analysis

Criminal defendants may move for compassionate release pursuant

to 18 U.S.C. § 3582, as amended by the First Step Act of 2018:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i). In applying this provision, two key questions

arise. The first is whether the defendant has exhausted his or her

administrative remedies. The second is whether extraordinary and

compelling reasons, as well as the defendant's own history and

characteristics, warrant a reduction of the defendant's sentence.

7

Application Note 1 to U.S.S.G. § 1B1.13 states in pertinent parts that extraordinary and compelling reasons exist when:

> (A) Medical Condition . . .
>
>> (ii) The defendant is – (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> . . .
>
>> (D) Other Reasons. – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Brant contends that his medical condition paired with the serious and heightened risks posed by the COVID-19 crisis in a prison setting (and particularly FCI Elkton) present "other reasons" warranting compassionate release. ECF No. 38, PageID.163-64.

## A.   Exhaustion of administrative remedies

In this case, Mr. Brant has satisfied the statutory requirement of exhaustion. Mr. Brant sent a letter to the FCI Elkton warden on March 29, 2020, (ECF No. 41-3) and the BOP denied his request to bring a motion on his behalf on April 22, 2020 (ECF No. 41-4).[3]

---

[3] The Court notes that it is clear from the BOP's response that it only evaluated Mr. Brant's request using pre-COVID-19 compassionate release guidance. ECF No. 41-4

**B.    Whether extraordinary and compelling reasons warrant Brant's release**

    i.    **The BOP's Consideration of U.S.S.G. § 1B1.13**

The Sentencing Commission provides a policy statement regarding sentencing reductions under § 3582(c)(1)(A). That statement, contained in U.S.S.G. § 1B1.13, has not been updated in the year and a half since § 3582(c)(1)(A) was amended in 2018. Consequently, § 1B1.13 speaks only to more restrictive criteria for seeking a reduction in sentence—i.e., a motion brought by the BOP where the defendant is "suffering from a terminal illness," or "experiencing a serious deterioration in physical or mental health because of the aging process." § 1B1.13(A)-(B). Therefore, the policy statement does not reflect motions like the instant one— brought by a defendant on the grounds of high risk of severe illness and/or death as a result of COVID-19. *See United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020) ("[T]here does not currently exist, for purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'"); *id.* at n.11 (collecting cases).

---

(citing BOP Program Statement No. 5050.50). That guidance recommends that the BOP only move to release when the defendant presents with a terminal or otherwise debilitating medical condition. *Id.* The Government here also appears to endorse that position, (ECF No. 41, PageID.227) despite the overwhelming evidence that pre-existing conditions like diabetes, hypertension, and moderate to severe asthma— conditions that would not otherwise be considered terminal or debilitating—could increase the potential for serious disability or death if also diagnosed with COVID-19.

That being said, Application Note 1 to § 1B1.13 defines "extraordinary and compelling reasons," as encompassing "other reasons" beyond those enumerated in subdivisions (A) through (C), in other words, where "there exists in the defendant's case an extraordinary and compelling reason other than, or *in combination with*, the reasons described in subdivisions (A) through (C)." Therefore, "extraordinary and compelling reasons" can exist from the "medical condition of the defendant" *other than* a terminal illness or age-related debilitating medical condition. *See United States v. Guzman Soto*, No. 1:18-cr-10086-IT, 2020 WL 2104787, at *3 (D. Mass. May 1, 2020) ("[T]he Attorney General, in giving direction to the Director of the Bureau of Prisons, has recognized that COVID-19 is an extraordinary and compelling factor which may be considered, alongside other factors, when determining whether home confinement is merited for certain prisoners."). And here, the COVID-19 pandemic, paired with a medical condition known to exacerbate the risk of substantial injury or death, is an extraordinary and compelling factor which may be considered. *See Miller v. United States*, No. 16-20222, 2020 WL 1814084, at *3 (E.D. Mich. Apr. 9, 2020) ("Miller has presented 'Other Reasons' in combination with his serious medical conditions, to warrant compassionate release.").

### ii.   Defendant's high risk of severe illness and/or death from COVID-19

Mr. Brant alleges that he is among a vulnerable population that is at high risk of complications should he contract the virus. He is male, 26 years old, and states that he has "a history of moderate to severe bronchial asthma" that has required treatment in the past. ECF No. 38, PageID.165. Mr. Brant provides evidence of his history of asthma via a letter from his family physician verifying Mr. Brant's history of "moderate to severe bronchial asthma," (ECF No. 38-2), and an emergency department report from July 2016, where he presented with wheezing and shortness of breath and was diagnosed with acute bronchitis and acute asthma exacerbation (ECF No. 38-3). Doctors administered Albuterol and Atrovent nebulizer treatments, and he was sent home with steroids and breathing treatments. *Id.* Defense counsel also reports that Mr. Brant presented to the emergency room on at least one other occasion for issues related to his asthma. ECF No. 38, PageID.166.

Mr. Brant's history of asthma did not go undocumented while incarcerated. His Presentence Investigation Report indicates that he reported having asthma "that worsens with seasonal changes" although he was not presently on any medications. *Id.* And while Mr. Brant spent some period of time incarcerated without being treated for his moderate to severe bronchial asthma, in early March 2020, Mr. Brant twice

presented to prison medical personnel complaining of shortness of breath, wheezing, and difficulty breathing. ECF No. 42 (sealed). Medical personnel did not appear to believe Mr. Brant was feigning his illness, as evidenced by the Mometasone Furoate, Albuterol inhaler, and Albuterol nebulizer they administered and prescribed. *Id.* As Mr. Brant has a documented illness that is known to increase the risk of severe illness or death if he also contracts COVID-19, this factor weighs in favor of release.

### iii.   Defendant's risk of exposure at FCI Elkton

As explained above, Mr. Brant is currently incarcerated at FCI Elkton, a BOP facility that has been hit among the hardest by COVID-19 in terms of prisoners who have died due to the virus. Some of the inmates at FCI Elkton were the subject of the judicial order in the *Wilson* case directing the BOP to relocate at-risk prisoners out of that facility by "compassionate release, parole or community supervision, transfer furlough, or non-transfer furlough." *Wilson*, 2020 WL 1940882, at *10. Mr. Brant is among that group. *Wilson*, 4:20-cv-000794, ECF No. 35-1, PageID.532. However, Mr. Brant has not been transferred from FCI Elkton. Mr. Brant indicates in his reply that as of May 13, 2020, he is still housed as FCI Elkton and has not been screened for COVID-19. ECF No. 43, PageID.257. *See also* BOP Inmate Locator, https://www.bop.gov/inmateloc/ (indicating that as of June 2, 2020, Mr. Brant is housed at FCI Elkton). Mr. Brant summarized his reasonable skepticism and concern well: "[t]he notion that he can count on the

institution to protect him as the death rates at that institution continue to climb is frightening." *Id.* And as a May 19, 2020 order by Judge Gwin acknowledges, Elkton officials "have made poor progress in transferring subclass members out of Elkton through the various means referenced in the Court's preliminary injunction Order." *Wilson*, 4:20-cv-000794, ECF No. 85, PageID.1126 ("As of May 8, 2020, five subclass members were 'pending [home confinement] community placement,' Six inmates were identified as *maybe* qualifying for home confinement. No inmates were deemed eligible for furlough transfer.")

COVID-19 has clearly found its way into FCI Elkton, and the BOP's response to the spreading viral infections in the facility has already been classified as "deliberately indifferent" by one court. *Wilson*, 2020 WL 1940882, at *8. Further, Mr. Brant is among the prison population at elevated risk of complications from the disease. While Mr. Brant is not within the category of persons recognized by the CDC as high-risk due to age—he is only 26 years old—Mr. Brant has medical records showing that he has displayed symptoms of, and been diagnosed with, "moderate to severe bronchial asthma." ECF No. 38-2. "Moderate" or "severe" asthma are the grades of the condition recognized by the CDC as triggering a heightened risk. And unlike the case cited by the Government where Judge Lawson denied compassionate release, Mr. Brant has documented moderate to severe asthma. *See* ECF No. 41,

PageID.227 (citing *United States v. Collins*, No. 17-20360 (E.D. Mich. May 5, 2020) (Lawson, J.)). This factor also weighs in favor of release.

## C.   Consideration of sentencing factors under 18 U.S.C. § 3553(a)

But even if the Court finds that extraordinary and compelling reasons may weigh in favor of release, the Court may not grant compassionate release unless doing so would be consistent with 18 U.S.C. § 3553(a). Section 3582(c)(1)(A) provides, in relevant part, that courts

> may reduce [a] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) after considering the factors set forth in section 3553(a) to the extent they are applicable.

18 U.S.C. § 3582(c)(1)(A). Section 3553(a) directs courts to "impose a sentence sufficient but not greater than necessary to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2).

This Court sentenced Mr. Brant to a 110-month sentence. It did not do so lightly and believed that a 110-month sentence was sufficient but

not greater than necessary to comply with the purposes of sentencing. At this time, Mr. Brant have served only a small portion—27 months—of his sentence. ECF No. 43, PageID.255. But as other courts have recognized, COVID-19 has altered the landscape of "sufficient but not greater than necessary." *United States v. Mel*, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) (finding release appropriate where "the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing"). When this Court sentenced Mr. Brant to 110 months in the BOP, it did not sentence him to the possibility of contracting a potentially deadly virus. That said, the Court is attempting to fashion relief for Mr. Brant that will best protect his health situation,[4] but also consider § 3553 factors that underlay the purpose for the particular sentence that was imposed. That consideration must now take into account that the BOP has decided not to provide relief to Mr. Brant, so the question of how the dangerous conditions caused by COVID-19 affects the § 3553 factors is clearly raised. Mr. Brant's 110-month sentence complies with § 3553. But the Court reserves the right to reconsider this, and the remainder of the § 3553 factors, should the BOP not comply with this Court's Order.

---

[4] The Court's relief is explained in greater detail below.

**D.    BOP should reconsider Defendant's request for release to home confinement and shall transfer Defendant out of FCI Elkton as previously ordered**

While the Court concludes that a reduction in sentence is not warranted, this Court strongly recommends that the BOP reconsider its denial of Mr. Brant's request for release to home confinement for all of the reasons stated above. As explained, it appears the BOP relied on guidelines that do not account for the extraordinary circumstances that COVID-19 poses, particularly in FCI Elkton for an individual with moderate to severe asthma, and the Court urges the BOP to do so. *See United States v. Doshi*, No. 13-20349, ECF No. 145 (E.D. Mich. Mar. 31, 2020) (Tarnow, J.) (recognizing that with respect to an inmate's *placement* during the remainder of his sentence, the BOP has sole authority).

Because Mr. Brant has already been designated as a member of the Medical Subclass in the *Wilson* litigation and has already been ordered to be transferred out of FCI Elkton by Judge Gwin, he has a legal right to transfer arising from that Order upon which a typical federal prisoner may not rely. While normally a district court leaves decisions regarding the placement of prisoners to the discretion of the BOP, the unique circumstances here involve a court order that is not being carried out. The Court therefore will **ORDER** that the BOP transfer Mr. Brant from FCI Elkton as required by Judge Gwin's order. To effectuate this order, the Government shall file a written report to the Court within fourteen

16

(14) days of the date of this Order demonstrating the efforts undertaken to accomplish the transfer of Mr. Brant from Elkton.[5] The Court may reconsider Mr. Brant's motion for compassionate release if the report indicates that Mr. Brant has not been transferred.

## IV. Conclusion

For the reasons discussed herein, the Court **DENIES** Defendant's Emergency Motion for Compassionate Release (ECF No. 38). However, the Court recommends the BOP to reconsider its decision that Mr. Brant is not eligible for home confinement and **ORDERS** that Mr. Brant shall be transferred from FCI Elkton in accordance with Judge Gwin's Order. *See Wilson*, 2020 WL 1940882 at *11.  Within 14 days of the date of this Order, the government **SHALL FILE A STATUS REPORT** indicating the steps taken to effectuate Mr. Brant's transfer.


**IT IS SO ORDERED**.


DATED: June 2, 2020.

BY THE COURT:


/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

---

[5] The Court recognizes that the BOP must comply with BOP policy of quarantining inmates for 14 days prior to transfer out of Elkton. *Wilson*, 2020 WL 1940882 at *11.