UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **CORY BRANT**, <br><br> Defendant. | 2:18-CR-20155-TGB-MKM-1 <br><br> **ORDER GRANTING GOVERNMENT'S MOTION FOR RECONSIDERATION OF TRANSFER ORDER (ECF NO. 46) AND DENYING DEFENDANT'S RENEWED MOTION FOR COMPASSIONATE RELEASE (ECF NO. 38)** |

## I. Introduction

On June 2, 2020, this Court issued an order denying Defendant's motion for compassionate release, but recommending that the Bureau of Prisons ("BOP") reconsider its denial of Defendant's motion for home confinement, and directing the BOP to transfer Defendant from Federal Correctional Institution ("FCI") Elkton pursuant to the United States District Court for the Northern District of Ohio's order in *Wilson v. Williams*, No. 4:20-cv-00794, --- F. Supp. 3d ---, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020). On June 4, 2020, the Supreme Court of the United States granted the BOP's request for a stay of the *Wilson* order pending disposition of the Government's appeal in the United States Court of Appeals for the Sixth Circuit. *Williams v. Wilson*, No. 19A1047, --- S. Ct.

1

---, 2020 WL 2988458 (June 4, 2020). And on June 9, 2020, the Sixth Circuit vacated the district court's preliminary injunction in *Wilson* that necessitated the transfer of vulnerable prisoners like Defendant from FCI Elkton. *Wilson v. Williams*, No. 20-3447, --- F.3d ---, 2020 WL 3056217 (6th Cir. June 9, 2020).

The Government now moves for reconsideration of the Court's transfer order in light of the Supreme Court's and Sixth Circuit's recent decisions and requests that the Court deny Defendant's renewed motion for compassionate release. ECF No. 46. The motion is fully briefed. *See* ECF Nos. 47, 48. For the reasons stated herein, the Court will **GRANT** the Government's motion for reconsideration (ECF No. 46) and **DENY** Defendant's renewed motion for compassionate release (ECF Nos. 38, 47).

## II. Motion for Reconsideration

The Court may grant a motion for reconsideration if the movant satisfactorily shows that: (1) a palpable defect mislead the parties and the Court; and (2) correcting the defect would result in a different disposition of the case. E.D. Mich. L.R. 7.1(h)(3). A defect is palpable if it is "obvious, clear, unmistakable, manifest, or plain." *Olson v. Home Depot*, 321 F. Supp. 2d 872, 874 (E.D. Mich. 2004). The Court will not grant a motion for reconsideration "that merely present[s] the same issues ruled upon by the court, either expressly or by reasonable implication." *Id.*

Here, the parties do not dispute that following this Court's June 2, 2020, Order, the Sixth Circuit vacated the preliminary injunction that necessitated the transfer of medically vulnerable prisoners, like Mr. Brant, from FCI Elkton. Additionally, the parties do not contest that the Court should vacate its transfer order given the intervening changes in the law. Accordingly, the Court **GRANTS** the Government's motion for reconsideration and **VACATES** its previous Order requiring Brant to be transferred out of FCI Elkton. ECF No. 44.

### III. Renewed Motion for Compassionate Release

In the Court's prior order, it stated that if the BOP did not transfer Mr. Brant from FCI Elkton, it would reserve the right to reconsider Mr. Brant's motion for compassionate release. ECF No. 44, PageID.286. Mr. Brant asks that the Court act on this and grant him compassionate release. ECF No. 47.

Criminal defendants may move for compassionate release pursuant to 18 U.S.C. § 3582, as amended by the First Step Act of 2018:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after

considering the factors set forth in sections 3553(a) to the extent they are applicable, if it finds that—
    (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i). In applying this provision, two key questions arise. The first is whether the defendant has exhausted his or her administrative remedies. The second is whether extraordinary and compelling reasons, as well as the defendant's own history and characteristics, warrant a reduction of the defendant's sentence.

**A.   Exhaustion**

As the Court indicated in its prior Order, Mr. Brant has exhausted his administrative remedies within the BOP. *See* ECF Nos. 41-3, 41-4.

**B.   Extraordinary and Compelling Reasons**

Application Note 1 to U.S.S.G. § 1B1.13 states in pertinent parts that extraordinary and compelling reasons exist when:

> (A) Medical Condition . . .
>     (ii) The defendant is – (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>   - -
> (D) Other Reasons. – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in

combination with, the reasons described in subdivisions (A) through (C).

In applying these provisions, the Court determines that the COVID-19 pandemic, paired with medical conditions known to exacerbate the risk of substantial injury or death, can create an extraordinary and compelling factor reason warranting compassionate release. *See Miller v. United States*, No. 16-20222, 2020 WL 1814084, at *3 (E.D. Mich. Apr. 9, 2020) ("Miller has presented 'Other Reasons' in combination with his serious medical conditions to warrant compassionate release."). *See also United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020) ("In including the catchall provision [provision D], the Sentencing Commission clearly intended that the necessary "extraordinary and compelling reasons" not be limited to the examples explicitly set forth in subdivisions (A) through (C) (although those circumstances should be instructive)."); *United States v. Guzman Soto,* No. 1:18-cr-10086-IT, 2020 WL 2104787, at *3 (D. Mass. May 1, 2020) ("[T]he Attorney General, in giving direction to the Director of the Bureau of Prisons, has recognized that COVID-19 is an extraordinary and compelling factor which may be considered, alongside other factors, when determining whether home confinement is merited for certain prisoners.").

To determine whether an extraordinary and compelling reason exists here, the Court considers several factors: the COVID-19 conditions

5

at the prison the defendant is incarcerated, the defendant's vulnerability to serious illness or death from COVID-19 based on the underlying medical conditions recognized by the Centers for Disease Control ("CDC"), the defendant's other medical conditions that otherwise raise questions about the defendant's health, and the defendant's age.

### i. Mr. Brant's Medical Conditions

Mr. Brant suffers from moderate to severe asthma. As explained in the Court's previous order, this condition is well-documented and predates his incarceration and the COVID-19 pandemic. However, since the Court's prior order, the CDC has updated its guidelines regarding those who are at "an increased risk of severe illness" from COVID-19. *People of Any Age with Underlying Medical Conditions*, Centers for Disease Control https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated June 25, 2020). These guidelines list conditions ranging from chronic kidney disease to type 2 diabetes mellitus. *Id.* While moderate-to-severe asthma was initially included on that list, it is no longer included on the latest update of the CDC guidelines. Under the new guidelines, rather than finding that people with moderate-to-severe asthma *are* at an increased risk for severe illness from COVID-19, the CDC says they "*might* be at an increased risk for severe illness from COVID-19," with the caveat that this information is based on what the CDC "know[s] at this time" and that "[c]urrently there are limited data and information about the impact

6

of underlying medical conditions and whether they increase the risk for severe illness from COVID-19." *Id.*

While it is helpful and appropriate to consider the latest CDC guidelines and to bear in mind that the scientific community's understanding of how COVID-19 interacts with underlying medical conditions will change as we learn more about the virus, it is still a serious matter that people with moderate-to-severe asthma still "might" be at an increased risk for severe illness. It is also less than reassuring to note that this information could change again. At age 26, Mr. Brant's age does not place him in an age group that is considered more vulnerable to COVID-19, and he has no other listed medical conditions that are considered vulnerabilities. Nevertheless, Mr. Brant's moderate-to-severe asthma diagnosis, as a condition considered by the CDC that may increase his risk for severe illness, places him in a more vulnerable position if he contracts COVID-19 than a person who does not have moderate-to-severe asthma.

    **ii.   Conditions at FCI Elkton**

The conditions at FCI Elkton, where Defendant is incarcerated, like most BOP facilities, are changing on a daily basis as they react to COVID-19. As of July 2, 2020, FCI Elkton has 277 positive prisoners, 7 positive staff, 9 prisoner deaths, 0 staff deaths, 582 recovered prisoners, and 46 recovered staff. https://www.bop.gov/coronavirus/ (updated daily). FCI Elkton has tested 2,245 prisoners for the virus and 822 prisoners have

tested positive. *Id.* As the facility's total population is 2,247, it appears that almost every prisoner has been tested. https://www.bop.gov/locations/institutions/elk/ (last visited July 2, 2020).

Since the Court's prior order, as explained above, the Sixth Circuit vacated the preliminary injunction in *Wilson v. Williams*. 2020 WL 3056271 at *12. It held that the medically vulnerable subclass (of which Mr. Brant is a member) had not shown a likelihood of success on the merits of their Eighth Amendment claim because they could not demonstrate that the BOP's response to the COVID-19 pandemic had been deliberately indifferent to a serious risk of harm. *Id.* at *7. Rather, the Sixth Circuit concluded that as of April 22, 2020, the BOP had "responded reasonably to the known, serious risks posed by COVID-19[.]" *Id.* But there have been additional changes to the BOP's response to COVID-19 in the facility.

The Government provides for the Court a declaration from the Executive Assistance/Acting Associate Warden at FCI Elkton, Andrea Burnside, that was filed in the *Wilson v. Williams* case. Burnside Declaration, ECF No. 48-2 (filed in *Wilson v. Williams* on May 29, 2020). In her Declaration, Burnside explains two methods that FCI Elkton is using to combat the virus's spread: isolation and quarantine. *Id.* at PageID.340. Prisoners who have symptoms or have tested positive are being isolated in designated isolation areas, and prisoners are released from isolation after 14 days so long as they are fever-free for 72 hours

prior to release and exhibit no other symptoms. *Id.* FCI Elkton as also added an additional period of "post-isolation recovery" where prisoners who leave isolation stay in a separately designated area until their total time equals 21 days. *Id.* at PageID.340-41. And now that rapid testing is available in the prison, all prisoners who complain of symptoms are tested before being placed in isolation. *Id.* at PageID.344.

FCI Elkton also quarantines for 14 days all asymptomatic persons who may have been exposed to the virus in order to observe them during the virus's incubation period and to separate them from other prisoners. *Id.* at PageID.341. If no prisoner within the quarantined group exhibits symptoms during the 14-day period, the group is released from quarantine. But if an inmate in the group does exhibit symptoms, that inmate is isolated and the 14-day quarantine clock restarts for the balance of the group. *Id.* Burnside also explains that the number of hospitalized prisoners has been declining since its peak on April 8, 2020, of 46 inmates. *Id.* at PageID.343. From April 12 to May 2, four prisoners were hospitalized, and from May 2 to the date the declaration was filed on May 29, no additional prisoners had been hospitalized for COVID-19-related illness. *Id.*

That said, prisoners at FCI Elkton continue to test positive for COVID-19 at unprecedented rates. On the date Mr. Brant responded to the Government's motion for reconsideration, he reported that only 40 prisoners were currently testing positive for the virus. ECF No. 47,

PageID.314 (filed June 19, 2020). As of July 2, that number had risen to 276. FCI Elkton is behind only FCI Butner Low in the number of current positive tests. Notably, other facilities that at one point were hotspots for the virus, like FCI Forest City Low (which has 660 recovered prisoners), and FCI Terminal Island (which has 674 recovered prisoners), are no longer reporting a high number of currently positive prisoners. For reasons unknown, the statistical evidence is showing that COVID-19 is continuing to spread through FCI Elkton despite the best efforts that BOP is taking to reduce it. Taking the fact that Mr. Brant's moderate-to-severe asthma is considered by the CDC as a condition that might expose him to severe illness if he contracts the virus, when combined with the increasing infections occurring at FCI Elkton, the facts before the Court do show the existence of an extraordinary and compelling reason that weighs in favor of compassionate release.

### C. Consideration of § 3553 Sentencing Factors & Danger to the Community

But finding that extraordinary and compelling reasons may weigh in favor of release does not complete the analysis that the Court must undertake in deciding whether such release should be granted. The Court must also consider all of the sentencing factors contained in 18 U.S.C. §3553(a). It must determine whether release is appropriate in light of those factors, and whether it is possible for the Court to determine that the defendant does not represent a danger to the safety of any other

person in the community, as provided in 18 U.S.C. § 3142(g). As to the sentencing factors, the Court must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, whether the sentence will serve deterrence goals, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. §3553(a). Upon careful consideration of these factors, the Court concludes that reducing Mr. Brant's sentence to time served would be inappropriate. The Court also determines, based on the circumstances of his offense and the nature of his prior criminal history, that the early release of Mr. Brant would pose a danger to the community.

Mr. Brant was convicted of two counts of possession with intent to distribute controlled substances, one count of felon in possession of a firearm, and one count of possession of a firearm in furtherance of a drug trafficking crime. ECF No. 24. According to the facts provided in the Presentence Report, on April 14, 2017, a search warrant was executed at Mr. Brant's home and he was found in possession of 13.4 grams of cocaine, 51.9 grams of heroin, a 9mm pistol (in his bedroom), and a .40 caliber pistol (in his vehicle). Present in the home were his girlfriend and three children. The probable cause for the search warrant was based on previous controlled purchases from Brant, and some of the prerecorded undercover funds were among the $3,325 in U.S. currency that was seized along with the narcotics and firearms. The .40 caliber pistol found

in Mr. Brant's vehicle had been reported stolen during a home invasion that occurred on March 3. 2016. For reasons that are unknown, Mr. Brant was not arrested and taken into custody on the date the search warrant was executed. Rather, a warrant was issued for his arrest and he was eventually arrested on February 21, 2018. When arrested in February 2018, Mr. Brant was again in possession of a .40 caliber pistol, an extended magazine, as well as 5.8 grams of heroin and 2.9 grams of cocaine.

In considering Mr. Brant's prior criminal history, he has a significant juvenile criminal record involving assaultive behavior and domestic violence. As an adult, Mr. Brant has two drug offense convictions in 2010, both for possession of marijuana (for which he received 12 months' probation and had numerous probation violations), and two more drug convictions in 2015, one for possession of heroin and marijuana and a second for a delivery of cocaine (less than 50 grams) and possession of a dangerous weapon (brass knuckles) (for which he received a combined sentence of 6 months' custody and two years' probation). He also has a number of other driving and larceny offenses. Mr. Brant also has history of bipolar disorder and depression.

Although the probation department calculated the applicable Sentencing Guideline range as 144 to 165 months, which included a minimum term of imprisonment of 60 months for the trafficking charge, this Court imposed a sentence of 110 months in prison, which was below

the Guidelines range, along with three years of supervised release. ECF No. 24. Mr. Brant's release date is not until December of 2025. Granting Mr. Brant compassionate release and reducing his sentence to time served when he has served less than a third of an approximately nine-year sentence would lead to unwarranted sentencing disparities and improperly minimize the serious nature of his drug-trafficking offense.

Compassionate release may only be granted under Sentencing Guideline § 1B1.13(2) if the Court can find that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Mr. Brant's repeated armed drug-dealing activity and his lengthy criminal history do not provide the Court with any assurance that his early release would not present a danger to the community. *See United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *1 (E.D. Mich. June 9, 2020) (Steeh, J.) (denying compassionate release to defendant incarcerated at FCI Elkton who suffers from obesity and body mass index of 43.9); *id*. at *3 ("Although Defendant argues he is a nonviolent offender, his drug trafficking and possession of an AK-47 as a convicted felon demonstrate the danger he poses to the community."). *See also United States v. Oliver*, No. 17-20489, 2020 WL 2768852, at *7 (E.D. Mich. May 28, 2020) (Berg, J.) ("[T]he seriousness of Oliver's drug trafficking offense conduct, and his recent history of similar criminal behavior, is such that the Court is unable to determine that his release would not present a danger to the

13

community."). As in *Oliver*, the Court concludes Mr. Brant's drug trafficking offense and history of similar behavior renders him ineligible for compassionate release.

## IV. Conclusion

For these reasons, the Government's motion for reconsideration is **GRANTED** and Cory Brant's renewed motion for compassionate release is **DENIED**.

**SO ORDERED**.

DATED: July 2, 2020.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge